GILLET, receiver of the St. Lawrence Bank, *vs.* MOODY.

Banks formed under the act to authorize the business of banking, passed April 18th, 1838, are not within the provisions of the revised statutes. (1 *R. S.* 591, §§ 1, 8, 9.)

Where a bank formed under that act agreed with the defendant, one of its stockholders, that in consideration of his anticipating the payment of his bond and mortgage for $5000, given to the bank, for his stock, and surrendering his stock to them, they would transfer to him five Arkansas bonds of $1000 each, which were then worth about 18 cents on the dollar, it was *held* that the agreement was not void; and the same having been executed by the defendant, a bill filed in behalf of the bank, which sought to set it aside, without offering to restore the defendant to the same condition in which he was before the agreement, was dismissed.

Banks formed under the general banking law are corporations.

IN EQUITY. The bill in this cause was filed before the chancellor, on the 24th of October, 1843, to set aside a certain agreement made by the directors of the St. Lawrence Bank with the defendant, one of the stockholders, in December, 1841, by virtue of which the defendant paid up a bond and mortgage given by himself to the said bank for five thousand dollars and surrendered his stock, on receiving five one thousand dollar bonds of the Arkansas stock. An answer was put in and proofs were taken, when the cause was referred to the vice chancellor of the third circuit. The cause was heard on pleadings and proofs, by the assistant vice chancellor of the first circuit, sitting for the vice chancellor of the third circuit, and on the 10th of April, 1847, the bill was dismissed by him with costs. The complainant thereupon appealed to the chancellor, and the appeal was transferred to this court, by force of the new constitution and the judiciary act of 1847. The facts are sufficiently stated in the opinion of the court.

*A. Mann, Jr.* for the appellant.

*J. Rhoades,* for the respondent.

VOL. V.          24

*By the Court,* WILLARD, J.   The St. Lawrence Bank was organized in the year 1838, by virtue of the act entitled " An act to authorize the business of banking," passed April 18, 1838; and commenced its business in the fore part of the year 1839, in the village of Ogdensburgh, in the county of St. Lawrence, and so continued until its suspension.   About the third of December, 1841, the bank, by a formal resolution of its directors, suspended specie payments, and the redemption of its circulating notes at its agencies; and never afterwards resumed specie payments, or the redemption of its circulating notes, either at its counter, or elsewhere.   On the twenty-third of December, 1841, the bank, having a large amount of bonds and mortgages, deposited with the comptroller, as security for circulating notes, and a large amount of Arkansas state stock, which was greatly depreciated in value, proposed to the defendant, who was a stockholder of the said bank to the amount of five thousand dollars, and also one of the directors, that if he would pay up his bond and mortgage, given for his stock, which did not in fact become due till 1843, and surrender his stock to the bank, the latter would, in consideration thereof, transfer to him five Arkansas bonds of one thousand dollars each.   This proposition was accepted by the defendant, and he, in February, 1842, in pursuance thereof, paid up in full the bond and mortgage for five thousand dollars, given originally for his stock, and surrendered his stock to the bank; and received the five Arkansas bonds of the nominal amount of one thousand dollars each.   It is stated by the defendant that these bonds were at that time, worth but about eighteen cents on the dollar, and the proof shows that they were not worth much beyond that sum.   Sometime in the winter of 1841–2, the bank commissioners filed a bill against the St. Lawrence Bank, and obtained an injunction, which was served on the cashier of the bank, on the tenth of March, 1842.   It is admitted that Mr. Gillet was appointed the receiver of the effects of the bank, by an order of the chancellor in that suit, made on the twenty-fourth of February, 1843 ; and that the bank shortly afterwards executed the usual assignment to him of all its property.   The

object of this bill is to annul the said agreement between the defendant and the bank, and to compel the former to surrender to the receiver the aforesaid Arkansas bonds.

The facts which arise out of the pleadings and proofs justify the assumption that the bank, at the time it suspended specie payments, was in fact insolvent. There is room, however, to believe that the defendant and the officers of the bank were confident, at that time, that its assets were more than enough to pay its debts, and that if the stockholders, whose stock was secured by bonds and mortgages, would anticipate the payments, the bank might be able to resume business and wind up its affairs without loss to its creditors. Subsequent events, however, show that they were mistaken in this assurance, as the bank was, probably, at that time, unable to pay all its debts, with its own means.

Although the St. Lawrence Bank was a corporation constitutionally formed, (*see Gifford* v. *Livingston*, 2 *Denio*, 380, *and Warner* v. *Beers*, 23 *Wend.* 103,) yet we think it is not subject to all the provisions in the statute " to prevent the insolvency of moneyed corporations." (1 *R. S.* 588. *Gillet* v. *Campbell*, 1 *Denio*, 520.) In the last mentioned case, Bronson, J. expressly holds that the eighth section is inapplicable to the free banks; and if so, the ninth section is inapplicable also. And it seems to us that the first section falls within the same category, as it contains only imperative prohibitions against the performance of certain specified acts by the *directors* of moneyed corporations—a class of officers not required by the charter of the St. Lawrence Bank.

The question, then, arises whether the agreement which the bill seeks to annul was in fraud of the creditors and stockholders of the bank. It is a general rule that corporations can only exercise the powers, and carry on the business, which the statute under which they are created has authorized them to exercise and carry on, either in terms or by necessary implication. (*Per Walworth, chancellor, in Safford* v. *Wyckoff*, 4 *Hill*, 443.) And it is equally well settled that they can only act in the manner prescribed by law. (*Per Marshall, Ch. J.*

Gillet v. Moody.

*in Head and others* v. *The Providence Ins. Co.,* 2 *Cranch,* 167.) The fourth section of title four, chapter eighteen, of the first part of the revised statutes, (1 *R. S.* 603,) enacts, as far as is applicable to this case, as follows: " Whenever any incorporated company shall have refused the payment of any of its notes, or other evidences of debt, in specie, or lawful money of the United States, it shall not be lawful for such company, or any of its officers, to assign or transfer any of the property or choses in action of such company, to any officer or stockholder of such company, directly or indirectly, *for the payment of any debt ;* and it shall not be lawful to make any transfer or assignment *in contemplation of the insolvency* of such company, to any person or persons whatever ; and every such transfer and assignment to such officer, stockholder, or other person, or in trust for them, or for their benefit, shall be utterly void." The supreme court, in *Bowen* v. *Lease,* (5 *Hill,* 221,) held this section applicable to the act incorporating the Erie Rail-Road Company ; and there cannot be a doubt, we apprehend, that it is a branch of those regulations to which all corporations are subject, which are not expressly exempted by law. But the obvious answer to the application of the section to this case is, that the defendant was not a *creditor of the bank,* but a debtor ; and the agreement to assign the Arkansas stock was clearly not made in contemplation of the insolvency of the bank, in order to give the defendant an undue advantage over the other stockholders and creditors of the institution, but to prevent its insolvency, and thus enable it to discharge all its obligations. The object of the statute is to prevent fraudulent preferences being given by an insolvent corporation to its officers, stockholders and favorite creditors. The facts fail to bring this case within the category for which the statute was enacted.

There is nothing in the pleadings or proofs to show that it was not for the interest of the creditors that the bargain in question should be carried out according to its terms. Indeed some of the witnesses testify expressly that the contract was for the interest of the bank ; and none has shown that the bank would have been better off had the arrangement not been

Gillet *v.* Moody.

made. The contract was neither against the statute, or public policy. It was upheld by a valuable consideration, the payment in advance of a sum of money not due under a year. And at that time the stock of the bank was probably esteemed to be of as much value as Arkansas bonds. Both were below par, and which would ultimately be worth the most could not then be determined. Each party incurred a risk, without any guaranty of the value of the property exchanged. The bank surely was as competent to know the value of its own stock as the defendant. There was in short no fraud in the matter.

There is no doubt of the principle that the creditors of an insolvent corporation are entitled first to be paid out of the assets of the company, before the stockholders can be reimbursed for their stock. (7 *Paige*, 198.) Nor is there any doubt that the stockholders of an insolvent company, who have not paid the full amount of their stock, are liable to the creditors of the corporation to the extent of what remains unpaid upon their several shares of such stock, or of so much as may be necessary to supply the deficiency in the assets of the corporation to pay its debts. (10 *Paige*, 290. 9 *Id.* 152.) But the principle is inapplicable to this case, because the defendant did pay the full amount of his stock. The complainant cannot succeed in this case unless he can impeach the fairness of the transaction. He has, in our judgment, failed to show any actual fraud in the agreement, or such inadequacy of consideration as would warrant the court in imputing a want of good faith to the officers of the bank, by whom the bargain was made. Nor should we lose sight of the fact, that the complainant does not propose to restore the defendant to the condition in which he would have been, had the contract not been made. He claims to hold the advantages acquired to the bank by the defendant's payment in advance, and the assignment of the stock of the institution, and to reclaim what the bank gave as the equivalent for those advantages. This is inequitable, and against the settled practice of the court.

We have already intimated a doubt whether the 1st section of article 1, title 2, chapter 18 of the 1st part of the revised

statutes " of moneyed corporations," was applicable to this case ; but if it is applicable, we are of opinion that the remedy for a violation of the duties therein enjoined upon the directors of the institution, is the personal liability imposed by the 10th section of the same article, (1 *R. S.* 591,) upon every director who shall violate it, in favor of the creditors and stockholders respectively, to the full extent of any loss they may respectively sustain from such violation.

On the whole, there is no error in the decree of the assistant vice chancellor in dismissing the bill with costs, and it must be affirmed.

Decree affirmed.

NEW-YORK GENERAL TERM, January, 1849.    *Hurlbut, McCoun, and Edwards,* Justices.