*Twenty-first Judicial District.*

# In the Court of Common Pleas of Schuylkill County.

## (*In Equity.*)

### EMILY T. ECHERT *et al. v.* VALENTINE FERST *et al.*

Cutting timber on the land of another, without color of title, is destruction to the freehold, and may be denominated *destructive trespass.*

Equity will enjoin against the commission of such acts, when the party is insolvent, and where it is necessary to prevent a multiplicity of suits.

Opinion delivered October 20, 1873, by

WALKER, J. This bill in equity sets forth that the complainants are the owners of 115 acres of timber land, with allowance, situate in Pinegrove township, Schuylkill county. That the defendants are the owners of the adjoining land, and are knowingly and willfully engaged in cutting down and removing the timber trees from the land of the complainants. That said land is only valuable and useful for the timber. That the defendants are persons of insufficient means to answer in damages, for the injury already done and which they are still doing, and that a judgment against them would be entirely fruitless.

Upon the presentation of this bill at chamber, a preliminary injunction issued, and the court fixed the 25th July, 1873, for the hearing, which was continued to suit the defendants until the 23d September, 1873, at which time it was ably argued by counsel. The affidavits read support these facts.

The question now is whether upon these facts, the injunction shall remain.

" The writ of injunction is a high prerogative, to be exercised with great caution, and only for the prevention of irreparable injury and where no legal adequate remedy exists." New Boston C. & M. Co. *v.* The Pottsville Water Co., 4 P. F. S. 164; Clark's Appeal 12 P. F. S. 447.

If neither of these exists, a court of chancery will not interfere, but will turn the party over to his action at law for his redress.

" Whether the injury complained of be irreparable or not, is a conclusion of law for the chancellor from the peculiar circumstances." Hilliard on injunction, 322, §3. And the facts that show the nature of the irreparable injury must appear in the bill, a more general averment is not enough. Chesapeake and Ohio Co. *v.* Young, 3 Md. 480; Adams Equity 210 and notes. And what is meant by *"irreparable damage or mischief,* is defined by the supreme court in Commonwealth *v.* Pittsburg and Connellsville R. R. Co., 12 Harris 159. Nor will the relief be withheld because the bill omits to charge the injury as irreparable, if sufficient facts are alleged to satisfy the court that such is the case. Davis *v.* Reed, 14 Md. 152 ; High on Injunctions, 464.

On the part of the defendants it is contended :

1. That the damage complained of is not irreparable.

2. That an adequate remedy exists at law.

3. That injunctions to prevent waste only lie at the instance of the remainderman, mortgagee, or one having the ultimate interest in the land.

4. That injunction is not the remedy for a criminal act.

An injury is irreparable where it is not susceptible of any adequate compensation in damages, or where from its continuance a permanent mischief must occasion a constantly recurring grievance, which cannot be otherwise prevented. Hilliard on Injunctions, 25 § 31. The bill sets forth and the affidavits support it, that the land is only valuable for the timber, which the defendants are cutting down and carrying away. The timber is a part of the real estate (9 Wr. 112) and every tree cut diminishes the value of the land. It is also alleged that the defendants are insolvent. If they be insolvent, and are allowed to take the timber away, the conclusion of law necessarily follows, that the damage to the plaintiffs is not susceptible of adequate compensation, and the injury irreparable.

2. Is there an adequate legal remedy ? An action of trespass can be sustained for every renewed cutting. This would increase litigation and would be insufficient to prevent the wrong complained of. This appears to be the only proper remedy of the complainants.

3. An injunction to prevent waste is the usual remedy of the remainder man, mortgagee, and one having the ultimate interest in the land (Hilliard on injunctions, 325, § 3 ; 2 Blackstone's Com. 281), yet injunctions to prevent *destructive trespass* have of late years obtained especially where there have been repeated acts and trespasses. Coulson *v.* White, 3 Atkins 20 ; Scheetz' Appeal, 11 Casey 88 ; Stewart and Foltz' Appeal, 6 P. F. S. 413.

The interference of equity in cases of waste, is a wholesome jurisdiction to be liberally exercised in the prevention of irreparable injury, and depends on much latitude of discretion in the court. Kane *v.* Vanderburgh, 1 John's Ch. 11 : Hill on Inj. 324. That injunctions may issue to restrain trespasses under color of right, seems to be at length settled. Mitchell *v.* Dors, 6 Vesey 147 ; Twort *v.* Twort, 16 V. 130 ; Earl of Cowper, *v.* Baker, 17 V. 128 ; Thomas *v.* Oakley, 18 V. 186 ; Courthope *v.* Mapplesden, 10 V. 291 ; Hanson *v.* Gardner, 7 V. 309 ; North Union Railway *v.* The Bolton and Preston Railway Co. 3 Railway and Canal Cases 345.

The destruction of timber on complainant's land, where such timber is necessary for the use and enjoyment of property is enjoined in Maryland. Davis *v.* Reed, 14 Md. 152; High on Injunctions § 464. In Connecticut where the title is unquestionable, relief as against a trespasser without color of right will be granted. Falls et al. *v.* Tibbett, 31 Conn. 165. Equity will interfere to prevent destruction to inheritance *even though both title and possession are in dispute.* Cornelius *v.* Post 1 Stocht

196; Speer *v.* Cutter, 5 Barb. 486. Chancery does not treat questions of destructive damage now, exactly as it did forty, or fifty years ago. Haigh *v.* Jaggar, 2 Coll. 234 (33 Eng. C. h. Rep.) The change has been marked since the Fleming Case reported in 7 Vesey 308.

4. There is a difference between an injunction to prevent waste, and one to prevent a trespass. The law is settled that for a criminal act an injunction will not be granted. Hilliard on Injunction, 2 § 1; Mayor *v.* Thorne, 7 Page 264. Unless the trespasser be insolvent, or the injury irreparable and destructive to the plaintiff's estate, and such as calls for immediate relief. Morse *v.* Massini, 10 Min. 590; Hilliard on Injunctions, 319 Sec. 1. These objections are therefore not sustained under the authorities cited.

The complainants urge that these repeated trespasses to their freehold denominated *destructive* trespass, can only be prevented by injunction, and that the insolvency of the defendants is a legal ground for the writ. Destructive trespass is defined to be damage amounting to destruction to the inheritance done by a stranger, whose possession or entry is unlawful, (Adams Equity 209), and it is a more appropriate term in the present case than waste. Trespass upon real estate in Crockford *v.* Alexander, 15 Vesey 138, the lord chancellor terms "destruction." In Smith *v.* Collyer, 8 Ves. 90, Lord Eldon remarked, "it was always surprising to him, that the jurisdiction by injunction was taken so freely in *waste*, and not in trespass, *for there is a writ at common law after action to restrain waste, but a trespass after one action may be repeated.*" It does seem to me that when irreparable damages must ensue, there is more reason for granting an injunction to prevent destructive trespass, than to prevent waste, for the reason of the common law remedy after action.

In case of insolvency an injunction will be granted. So when it is to prevent waste and avoid a multiplicity of suits. Speer *v,* Cullen, 5 Barb. 487; Hilliard on Injunction, 329 Sec. 4. Per Paige J. See Chief Justice Wright's opinion in Cowles *v.* Shaw, 2 Iowa 496. See, also, Hawley *v.* Clower, 2 Johns Ch. 122; Hart *v.* Mayor, 2 Page 264; Winnipiseogee Lake Co. *v.* Worster, 9 Foster N. H. 449; James *v.* Dixon, 20 Mo. 79; Shepley *v.* Ritton, 7 Md. 408; Cobb *v.* Smith, 16 Wis. 661. 2 Story's Equity Jur. § 925 *et seq*; Adams Eq. 425. So an injunction was granted when the defendant was a pauper, although a legal remedy existed. Hodson *v.* Duer, 2 Jurist 1014. Lowndes *v.* Bettle, 4 Am. Law Reg. 169.

Lord Hardwicke held, as early as 1743, that every trespass is not a foundation for an injunction, but repeated trespasses become a nuisance and may be restrained. Coulson *v.* White 3 Atk. 20. For such injury is not reparable in an action for damages, besides that it would be required to be followed up by successive actions. "This," Judge Sharswood says, "*is a well recognized distinction.*" Masson's Appeal, 20 P. F. S. 30.

The 13th section of the act of assembly of 16th June, 1836, (Purdon's Dig. 591), which extends the jurisdiction of equity to " *the preven-*

*tion or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals,"* applies to *wastes* by cutting down and removing timber. Denny *v.* Brunson, 5 C. 382. (See act 14 February, 1857, sec. 39, Purdon's Dig. 592, pl. 8, extending equity powers to the state in general.)

When trespasses are constantly recurring and threatened to be continued, they may be redressed by injunction. Stewart & Foltz' Appeal, 6 P. F. S. 413. See also in Smith & Fleek's Appeal, 19 P. F. S. 479, before cited, Judge Williams decided that cutting down timber to the injury of the inheritance, being waste, may be restrained in equity.

Chancellor Kent held that injunctions will be granted to *prevent trespass as well as to stay waste,* where the mischief will be irreparable, and to prevent a multitude of suits. Livingstone *v.* Livingstone, 6 John's Ch. 497 ; Watson *v.* Hunter, 5 John's Ch. 168.

Judge Paige, in Speer *v.* Cutter, 5 Barb. 188, remarks, "that courts of equity originally declined to interfere by restraining waste or trespass where the right was doubtful or the defendant was in possession, claiming by an adverse title (4 John's Ch. 22 ; and Story's Eq. Jurisprud. § 918), but such courts have gradually enlarged their jurisdiction in such cases, and now they interfere to prevent injury to land where the title is in dispute and the right is doubtful, if the waste or trespass will be attended by irreparable mischief, or if, from the responsibility of the defendant or otherwise, the plaintiff cannot obtain relief at law ; and to sustain this position he cites Hart *v.* Mayor, 3 Paige 214 ; Winship *v.* Pitts, 3 Paige 261 ; 2 John's Ch. 121. "Trespass," says Mr. Justice Baldwin in the case of Bonaparte *v.* The Camden and Amboy R. R. Co., 1 Baldwin 205, *"is destruction in the eye of equity when there is no privity of estate; it* (equity) *prevents its repetition or continuance, protects the right—arrests the injury and prevents the wrong:* this is a more beneficial and complete remedy than the law can give, and, therefore, the proper one for a court of equity to administer." 9 Wheat. 842 ; 1 Ves. 189 ; 2 John's Ch. 413 ; 4 Pet. 215.

The decisions of different states on this question are not in all respects uniform (see Stevens *v.* Beekman, 1 John's Ch. 318, and others), but from the current of authorities, English and American, we may safely conclude that equity will not lend its aid to restrain a criminal or penal offence.

But where the trespass is destructive to the real estate amounting to irreparable injury; where there is no adequate legal remedy; where the title in the plaintiff to the land is complete and the wrong-doer is insolvent; where it is to prevent waste to the inheritance, and where a multiplicity of suits must be the result of legal proceedings ; in all such cases equity will enjoin to prevent the injury complained of. It is evident, from the facts, that this case falls within the adjudged cases, and that the plaintiffs are entitled to equitable relief. Even if the offence of cutting timber had not been passed upon, and the remedy by injunction clearly and repeat-

edly decided by our own courts, and the courts of the several states, I should still be inclined to grant the relief prayed for; for no vested right of the defendant is determined in this application, and no injury can result from their ceasing to cut timber for the present, until the title is established, for, as has been said by a distinguished writer upon equity jurisprudence, (Willard Eq Juris. 408), " *the extent to which the jurisdiction may be carried is not marked out by any adjudged case, and from the nature of things it must forever remain undefined..*". Hilliard on Inj. 12, §13. Under the English practice, with which we are gradually assimilating, the powerful aid of equity may be invoked to redress the variety of recurring acts and never-ending grievances of mankind, where the object is the prevention of irreparable damage, and where no legal remedy exists. If it were not so, it would be no more efficient than law, which, by reason of its universality, has long since been found deficient and unequal to the full and complete administration of justice.

And now, to wit: October 20, 1873, it is, therefore, ordered, adjudged, and decreed, that the special injunction issued in this case, prohibiting the defendants from cutting timber on the land of complainants, remain until further order.

*George R. Kaercher* and *R. L. Ashhurst,* Esqs., for plaintiff; Messrs. *Hughes & Farquhar,* for defendants.