WHEELER BEERS AND OTHERS *vs.* THE BRIDGEPORT SPRING COMPANY.

The directors of a joint stock corporation voted "to declare a dividend of seventy per cent. upon the capital stock, the amount to be placed pro rata to the credit of each stockholder and made payable without interest at such time as may be directed by the board." The dividend was based upon profits actually received. Held that the corporation thereby became indebted to each stockholder for the amount of his share of the dividend, payable within a reasonable time, and that on the refusal of the corporation the stockholder could enforce payment by the aid of a court of equity.

The directors had declared several dividends upon the same terms, and from profits actually received, amounting in the whole to 115 per cent., besides sundry dividends which were paid to the stockholders. It was found that the company had no more cash funds than sufficient to carry on its ordinary business and pay such dividends as it was actually paying, and that the 115 per cent. had been invested in real estate and improvements, in machinery, and in material required in the business, that no part of it had been lost, and that the directors had acted in good faith and according to their best judgment. Held that these facts did not constitute a sufficient reason for refusing the aid of equity to certain stockholders who demanded payment of the dividends in question, and that the corporation should be ordered to pay the same at such time or times as it should be found, on further enquiry, that they could be paid without serious injury to its business.

The directors, some time after all the dividends in question had been declared, passed a vote that the amount of the dividends standing credited to the stockholders should be taken from the account of each stockholder and carried to an account to be known as a Surplus Fund Account. Held to be of no effect against any stockholder not assenting, actually or impliedly, to the arrangement.

A court of chancery has power to compel the directors of a corporation to declare a dividend where without reasonable cause they refuse to do so.

The directors of a corporation are trustees for the benefit of all the stockholders, and where the rights of a minority are disregarded a court of chancery will protect them.

VOL. XLII.—3

BILL IN EQUITY to compel the respondents, a joint stock corporation, to pay over certain dividends claimed to have been declared by the directors; brought to the Superior Court in Fairfield County. The following facts were found by the court.

On the 29th day of March, 1864, the Bridgeport Spring Company was organized as a joint stock company, with a capital stock of $20,000, which it increased in the manner required by law in November following to the sum of $30,000. The company went on in the business for which it was organized, making earnings and paying dividends as hereinafter stated.

At a meeting of the board of directors, held July 11th, 1866, they declared the first dividend of the company, one of 15 per cent., payable January 1st, 1867. This dividend was paid when due.

At a meeting of the directors, held July 13th, 1866, it was voted "To declare a further dividend of 26 per cent.; the amount to be placed, *pro rata*, to the credit, on the books of the company, of each stockholder, and made payable, without interest, at such time as may by the directors be ordered." At a meeting held July 15th, 1867, it was voted "That the balance due on last year's earnings, 26 per cent. dividend declared, be made payable January 1st, 1868," and the dividend was paid at that time.

At the same meeting of the directors they passed the following resolution: "To declare a dividend of 70 per cent. on the capital stock of this company; amount of said dividend to be placed, *pro rata*, to the credit, on the books of the company, of each stockholder, and made payable, without interest, at such time as may be directed by the board."

Dividends were afterwards declared by the directors in the same terms as this last resolution, as follows: July 15th, 1868, one of 40 per cent.; July 19th, 1869, one of 25 per cent.; July 18th, 1870, one of 10 per cent.

During the same time the following dividends were declared in cash and paid by the corporation, viz: July 15th, 1868, one of 15 per cent., out of the earnings of 1867; June 26th,

1869, one of 15 per cent., also out of the earnings of 1867; both which dividends were paid out of the 70 per cent. set apart July 15th, 1868. Also July 13th, 1872, one of 10 per cent., which was duly paid; and July 12th, 1873, one of 6 per cent., to be taken out of the 70 per cent. before mentioned and payable on the 1st of January, 1874. The payment of this last dividend has been twice postponed, and is still unpaid, because the directors have not deemed it advisable to take the funds necessary therefor from the business.

At a meeting of the directors, held on the 13th day of July, 1872, the following resolution was passed:—

"*Resolved,* That **115** per cent. of the earnings of this company previous to July 1, 1870, and now standing credited, *pro rata,* to each stockholder, and subject to the direction of the board of directors, shall be taken from the account of each stockholder, *pro rata,* and carried to an account to be known as a surplus fund account."

And at a subsequent meeting of the board, held on the 16th day of September, 1872, the following resolutions were passed:—

"*Resolved,* That dividends shall hereafter be made as soon as the money in the hands of the company shall, in view of the needs of the company, warrant.

*Resolved,* That all dividends hereafter made, shall be declared from the account known as the surplus fund account, till the full amount of 115 per cent. on the capital stock be paid."

The corporation has made the profits or earnings represented by said sum of 115 per cent. of its capital, which has, from time to time, been invested in improvements upon real estate, and in machinery, tools, fixtures and material, in the opinion of the directors advantageous to the business of the corporation.

There are in Bridgeport other corporations organized for and carrying on the same business, that have larger capital than the one in question and a very favorable reputation, and this corporation, in the opinion of the directors, has been better able, by means of the property now in its control, to successfully compete with these corporations.

If the respondents are compelled to pay, within a comparatively short time, the whole of the 115 per cent. to the stockholders, the corporation will be required to contract its business and encumber its property to such an extent as would be seriously injurious to and perhaps destructive of its credit and business.

In the adoption of the resolutions of the board of directors, passed at meetings held on the 13th of July, 1872, and on the 16th of September, 1872, the object was to keep that account in such form as would show to the stockholders at each annual meeting how much of the 115 per cent. was still unpaid to the stockholders, and to simplify the keeping of the books.

The company never had, since July, 1868, in actual money, at any one time, more than sufficient to carry on its ordinary business and to pay the dividends that have been ordered paid; and when a cash dividend has been paid, the company has found it necessary to borrow some money on accommodation paper from the banks, to enable it to meet its obligations with promptness.

The 115 per cent. was, and has continued to be, invested, as its several portions were from time to time earned, in real estate, in improvements upon such real estate, in machinery, tools, fixtures, and material required and needed in properly carrying on the business, and has in no wise been changed in its use or appropriation, at the time of or since the adoption of the resolutions aforesaid; nor has the amount been impaired or lost, but exists in the form of the investment stated.

The directors have acted in good faith and in the belief that the action taken by them was for the interest of the company and its stockholders.

The whole number of shares into which the capital stock of the company was divided, is twelve hundred, of which the petitioners owned 360 at the time the suit was brought. Since then Wheeler Beers, one of the petitioners, has sold his stock, but, in making the sale, he reserved to himself all such dividends as had, prior to the bringing of the suit, been declared by the directors.

The vote of the directors, passed July 15th, 1867, was reported to the meeting of the stockholders, held afterwards on the same day, and approved by them by a formal vote. The vote of the directors, passed at their meeting held July 13th, 1872, by which they directed the 115 per cent. to be " carried to an account to be known as a surplus fund account," was passed without the knowledge of those of the stockholders who were not included among the directors, and without the knowledge of any of the petitioners.

The entire earnings of the company, unexpended in dividends actually paid over, and existing at their statement in July, 1872, was about 131 per cent. of the capital stock, and at the statement in July, 1873, 155 per cent. of such capital; all of which earnings were invested in real estate, improvements thereon, tools, fixtures, material and accounts and cash, the item of cash then on hand amounting to the sum of $718.11.

The petitioners, prior to the bringing of the petition, caused to be delivered to the president and directors of the company the following request in writing, which was signed by all the petitioners by their attorney :—

" Bridgeport, February 17th, 1873. To the President and Directors of the Bridgeport Spring Company : Gentlemen— The undersigned, stockholders of said company, hereby request you to restore to the stockholders thereof the earnings of said company with which said stockholders had been credited previous to July 1st, 1870, amounting to 115 per cent. of the capital stock, and which had been declared as dividends to the said stockholders before that time, and taken from them by a resolution of said directors, passed July 13th, 1872, and to the condition they were in prior to the passage of said resolution. They also request you, without delay, to pay over to them their respective shares of said earnings as dividends before declared to them."

Upon these facts the case was reserved for the advice of this court.

*Sturges* and *G. Stoddard*, for the petitioners.

1. A bill in equity is the appropriate and only remedy in this case. An action at law would not lie, as the directors had not fixed the time of payment. *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige, 203; *Pratt* v. *Pratt, Read & Co.*, 33 Conn., 446.

2. If the earnings of the company had not been separated from the capital by the directors, and placed to the credit of the stockholders, it would be the duty of the court to compel the company to divide the earnings. The power to determine whether they shall pay dividends is not vested in the directors, or the majority of the corporators. This power rests with the court. *Barnard* v. *Vermont & Mass. R. R. Co.*, 7 Allen, 521. The stockholders are presumed to have invested their money for the purpose of obtaining annual returns. Before extending its business, therefore, the company should have increased its capital, as it had the power to do, and the directors, by taking the earnings for that purpose, committed a gross violation of their duty. The directors, having wrongfully invested the earnings which had been set apart as dividends, their only remedy would be an increase of capital. *Hoole* v. *Great Western Railway Co.*, Law Reps., 3 Ch. Appeals, 269. Failing in this, if money to pay these dividends could not be borrowed on the credit of the company, its affairs should be wound up, the dividends paid over, and capital divided. For this wrong of the directors the company is liable to the aggrieved stockholders. *N. York & N. Haven R. R. Co.* v. *Schuyler*, 34 N. York, 49.

3. The directors, by declaring these dividends, separated the earnings of the company from the capital stock, and they thereby became the property of the stockholders, and no longer remained the property of the corporation. The directors, in their resolutions declaring these dividends, used the word dividend, which imports a distribution of the funds of the corporation among its members. *Williston* v. *Michigan Southern R. R. Co.*, 13 Allen, 404. They are none the less dividends because the time for their payment was afterwards to be fixed by the directors. Perry on Trusts, § 545; *Price* v. *Anderson*, 15 Sim., 473; *McLaren* v. *Stainton*, 3

DeG. F. & J., 202 ; *De Gendre* v. *Kent*, Law Reps., 4 Eq. Cas., 283 ; *Earp's Appeal*, 28 Penn. S. R., 368 ; *Foote, Appellant*, 22 Pick., 299 ; *Balch* v. *Hallet*, 10 Gray, 402 ; *March* v. *Eastern R. R. Co.*, 43 N. Hamp., 515 ; *Van Doren* v. *Olden*, 19 N. Jersey Law R., 117 ; *King* v. *Paterson & Hudson River R. R. Co.*, 29 id., 82, 504 ; *Jackson's Admrs.* v. *Newark Plank Road Co.*, 31 id., 277 ; *Spear* v. *Hart*, 3 Robert. Sup. Ct. R., 420 ; *Clarkson* v. *Clarkson*, 18 Barb., 646 ; *Simpson* v. *Moore*, 30 id., 637 ; *LeRoy* v. *Globe Ins. Co.*, 2 Edw. Ch., 657. It was not necessary that there should be cash in hand, or on deposit, to the amount of the dividend declared, to entitle the petitioners to payment. *Stringer's case*, Law Rep., 4 Ch. Appeals, 492, 494. Nor did it make any difference that a part of the dividend declared was invested in property belonging to the corporation, and the capital increased thereby. *Reed* v. *Head*, 6 Allen, 174 ; *Stoddard* v. *Shetucket Foundry Co.*, 34 Conn., 542.

4. The directors, having declared these dividends, had no power to take them from the credit of the stockholders and carry them to a surplus fund account. This could not be done without the consent of the stockholders. *Dodge* v. *Woolsey*, 18 How., 341, 343.

*Seeley*, for the respondents.

1. The correct principle upon which a court of chancery should act in interfering in the management of a corporation like this is, " that while the final decision must rest with the court, yet in determining the question the court ought to adopt the same standard of judgment as that which would regulate the exercise of the sound discretion of the directors acting in good faith, in deciding the same question." *Barnard* v. *Vermont & Mass. R. R. Co.*, 7 Allen, 512. The facts found show that the directors have exercised, in this case, such discretion in good faith.

2. The facts found do not authorize the court to pass a decree ordering the respondents to declare the dividends (so called) payable, and to pay the same on demand. The facts found are,—1. That these dividends were invested, as their

several portions were from time to time earned, in real estate ; in improvements upon such real estate ; in machinery, tools, fixtures, and material required and needed in properly carrying on the business; and that they have continued to be and are now thus invested.    2d.  That these earnings, called dividends, were thus invested because these investments were, in the opinion of the directors, advantageous to the business of the corporation, and because they were in fact required and needed in properly carrying on the business.    3d.  That the directors have acted in good faith and in the belief that the action taken by them was for the interest of the company and its stockholders.    4th.  That the respondents have paid over the dividends to the stockholders as fast as they prudently could.    The company, commencing July, 1866, and ending July, 1872, a period of six years, paid over to its stockholders in five dividends eighty-one dollars on every one hundred dollars of the stock.    5th.  That if the company is compelled to pay these dividends within a comparatively short time, it will be required to contract its business, and encumber its property to such an extent as will be seriously injurious to, and perhaps destructive of, its credit and business ; in other words, the company will be ruined.    Upon these facts it is clear that the directors have had reasonable cause not to direct the payment of these dividends thus invested in real estate, machinery, tools, fixtures and material, required and needed in properly carrying on their business.    *Pratt* v. *Pratt, Read & Co.*, 33 Conn., 446; *Barnard* v. *Vermont & Mass. R. R. Co.*, 7 Allen, 512.

PARDEE, J.  When the defendant corporation, by the legal votes of its directors, declared the dividends in question from profits theretofore earned and received, made the same payable without interest at such time as might be directed by the board, and ordered the amount to be placed pro rata to the credit of the stockholders upon its books, the share of each stockholder in the several amounts was thereby severed from the common funds of the corporation and became his individual property.  Thenceforth the company owed him a debt,

payment of which at a proper time he might demand, and upon refusal, enforce by the aid of a court of equity. *King* v. *Paterson & Hudson River R. R. Co.*, 29 N. Jer. (Law,) 504; Redfield on Railways (1st ed.), 240, 597; *LeRoy* v. *Globe Ins. Co.*, 2 Edwards' Cha. R., 657. The proviso as to the time of payment does not absolve the company from all obligation to him; there remain all the essential elements of a debt, certain in amount, and certain to be paid upon a day not yet appointed, but which it is the duty of the debtor at some time to name. The legal effect of the vote is that the debt is to be paid within a reasonable time. The corporation, having declared that it had received for and owed to each stockholder a certain sum of money, and having set the same apart from its own funds for his sole and separate use, cannot thereafter nullify its votes or repudiate its obligations by declining to pay the dividend or to name any time when it would pay it.

The interests of each stockholder, so far forth as the share of the profits set to him as a dividend is concerned, become not only several and distinct from, but positively adverse to, those of every other stockholder and of the corporation itself, and the directors cease to represent him in relation thereto and cannot dispose of or deal with the same in any manner without his authority or consent. As between the corporation and the petitioning shareholders, therefore, the vote of July 13th, 1872, could in no manner affect their right to dividends theretofore declared and placed to their credit, unless they gave actual or constructive assent thereto. As the result of the vote, that which previously stood upon the books of the corporation as a debt due from it to the stockholders, assumed the form of an addition to its surplus fund. An intending purchaser of stock who should examine these books for the purpose of learning the financial condition of the company might be misled as to the amount of its assets and consequently as to the value of its shares, and each stockholder who assents to this change in the statement of the corporation accounts in reference to himself, might under

certain circumstances be estopped from asserting his right to any portion of the surplus fund as a dividend declared.

The finding of the court is, that if the corporation is compelled to pay, within a comparatively short time, the whole amount of unpaid dividends, it will be required to contract its business and encumber its property to such an extent as would seriously injure, and perhaps destroy, its credit and business. While there is not sufficient force in this fact to induce us to deny all relief to the petitioning minority of shareholders, it requires us to be cautious as to the manner in which relief shall be granted. We must keep in mind the financial condition of the company at the time of declaration of the dividends and the language of the votes respecting the payment thereof.

These dividends are based upon profits actually earned and received; these profits came from time to time into the treasury of the corporation in the form of money; this money has been expended for such purchases of additional real estate, machinery and materials, as in the judgment of the directors would promote the best interests of the company; and in that form of investment these profits now exist. The directors in the exercise of their discretion made an estimate as to the amount of the surplus profits of the corporation, looking at the assets as they actually existed, and upon a balance thus drawn declared, as they had a right to do, the dividends in question.

In *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige, 203, Chancellor Walworth says, that if directors " without reasonable cause refuse to divide what is actually surplus profits, the stockholders are not without remedy if they apply to the proper tribunal before the corporation has become insolvent." In *Pratt* v. *Pratt & others*, 33 Conn., 456, our own court said that joint stock companies " must have applied to them principles making them accountable like all trustees, or the grievance would be intolerable, since otherwise a majority of the stockholders, acting through the directors, who would thus cease to be in fact what the law considers them, the agents of the whole body of stockholders, and would become the

Beers *v.* Bridgeport Spring Company.

private agents of the majority, might set the minority at defiance and manage the affairs for their own supposed benefit and the benefit of the majority who appointed them."

Therefore, as there can be such a condition of things as will justify a court of equity in compelling directors to declare a dividend contrary to their judgment, of course circumstances may justify the court in compelling them to pay dividends which they have voluntarily declared.

One of the dividends in question was declared and credited to the stockholders more than seven years since, another more than six, a third more than five; the rust of interest meanwhile consuming them; and yet the respondent majority still refuses to indicate any time of payment even in the distant future; practically claiming the right to retain them as long as they can profitably use borrowed money for which they pay no interest. In this they have failed to meet the reasonable expectations, or recognize the equitable rights of the minority.

By an usage or custom which is as well established as if it stood upon legislative enactment, corporations steadily earning profits are expected to divide a portion of the same. Most of them make a division at least annually. A division declared imports payment thereof within a reasonable time. Indeed, in the mind of the purchaser of shares, investment and dividends are as closely associated as are seed time and harvest in the thoughts of the husbandman. And this unwritten law of the commercial world influences us somewhat in the determination of the case at bar.

One of the petitioners has sold his stock, reserving the declared dividends, and has no further or other interest in the prosperity or even existence of the corporation.

We think that the majority cannot equitably compel the minority to loan money to the corporation without interest in the form of dividends declared and withheld, beyond the earliest time when they can be paid without serious injury to the company. And in saying this we are not unmindful of the fact that during the time these dividends have been retained the directors have declared and paid to such persons

as have continued to be shareholders, other dividends from their profits to a percentage larger than the ordinary rate of interest upon money loaned. This indeed indicates successful management thus far. This success however should not cause us to overlook the rights of the stockholders in reference to other dividends declared and unpaid. They have thus long borne the risks attendant upon the business; they are entitled to reap the profits.

But the finding does not present the details of the present investments of the corporation with sufficient particularity to enable this court safely to name a day for the payment of the declared dividends to the petitioning stockholders. We therefore advise the Superior Court to ascertain, upon further hearing to be had for that purpose, at what time or times the same can be paid without serious injury to the corporation, and to decree accordingly. We also advise the Superior Court to decree that the corporation shall, by its duly authorized agents, restore the dividends so declared by its directors and received by it from the credit of the stockholders, to the condition they were in when credited to the stockholders prior to the vote of July 13th, 1872.

In this opinion the other judges concurred.