Fougeray v. Cord.

RENE J. FOUGERAY

v.

SAMUEL S. CORD, CHARLES KORB, SAMUEL T. CORD, THE LAUREL SPRINGS LAND COMPANY and THE LAUREL SPRINGS LAND AND IMPROVEMENT COMPANY.

1. A court of equity has power at the suit of a minority of the stockholders ·of a corporation to order a dividend of its assets where the safety of the interest of the minority requires it.

2. In determining whether to exercise such power in a particular case, the ·object of the corporation and the situation of its affairs must be taken into consideration.

3. Where a majority of the stockholders have combined to so manage the ·business of the corporation as to divert all the profits of the enterprise from their legitimate destination, and to appropriate them to their own use, and have in part executed their plan, and the circumstances render any change in the *personnel* of the management impracticable, a proper case has arisen for ·the intervention of the court to make a division of the assets.

4. A trustee who has committed a breach of trust by deliberately extracting and appropriating to his own use a portion of the trust fund, cannot cure the ·breach and demand the further custody of the fund by simply restoring it.

5. A, B and C joined in the adventure of buying a certain farm, cutting it up into building lots and selling them out at retail. For that purpose they formed a corporation and divided the capital stock equally among them, but paid nothing for it. The three were directors, and B and C combined to elect themselves officers. The farm was conveyed to the corporation and paid for by money advanced by B and C, who took therefor the obligation of the company. B and C, in the absence of A, voted themselves extravagant compensation for their services, and proceeded to divide the farm into lots and to sell them on the installment plan, in which they were very successful. Within a year their balance sheet showed a surplus of $37,000, over and above a debt to B and C, for money advanced of $3,000, and upwards of $16,000 for services. B and C then procured the corporation to assign and convey all its assets to C by deed, and at the same time formed a new corporation, of which A was not a stockholder, and procured C to convey those assets to it. A filed his bill in equity to set aside this transfer and the charge for services, and after an expression of opinion by the court at a preliminary hearing that the transfer must be set aside, B and C caused the new company to reconvey the assets to the old company, and at the hearing it appeared that the company was out of debt, except for the services of B and C.—*Held*, that A was entitled to have his one-third interest in the corporation ascertained and paid and set off to him, and that the resolution by which B and C fixed their salaries and compensation was void.

On final hearing on pleadings and proofs.

*Mr. Martin P. Grey* and *Mr. Charles R. Stevenson*, for the complainant.

*Mr. David J. Pancoast, Mr. John F. Harned* and *Mr. Smithers* (of Philadelphia), for the defendants.

PITNEY, V. C.

On the second day of April, 1889, the complainant, and the defendants Samuel S. Cord and Charles Korb, associated themselves together and formed a corporation and adopted the name of "The Laurel Springs Land Company." The certificate declared that the business of the company was to be conducted in the town of Laurel and in the city of Camden, and also in the city of Philadelphia; the object of the organization was "the buying, selling and exchanging of real estate and the improvement of the same;" the capital stock was fixed at $1,500, divided into thirty shares of $50 each, and with that sum the

Fougeray v. Cord.

company was to commence business; and that the thirty shares of stock were divided equally between the three incorporators.

The corporation had in view the purchase of a farm of eighty-five and one-half acres, owned by one Stafford, situate at the village of Laurel, upon which the complainant claimed to have an option of purchase at $8,550. In point of fact he had ascertained that Stafford was willing to sell at that price; that the land was near a railroad and suitable for cutting up into building sites; and he had a verbal agreement or understanding, and no more, with Stafford that he would sell him the land at that price within a reasonable time. Having this so-called option, and being himself without funds to carry out the enterprise, he called upon S. S. Cord and proposed to him to join him in it. S. S. Cord called in Korb, and the two—Cord and Korb—joined the complainant in the enterprise, and raised $3,050 cash payment necessary to purchase the property, and on the 30th of March, 1889, four days prior to the organization of the corporation, Stafford conveyed his farm to S. S. Cord, and he gave back a consideration money mortgage for $5,500, which, with $3,050 cash, made up the purchase money of $8,550. On the 8th of April, 1889, and after the organization of the corporation was completed, Cord conveyed the property to the corporation subject to the mortgage aforesaid. The company then organized with the three corporators as directors, and with Cord as president, and Korb as secretary and treasurer, and proceeded to issue to each other certificates of stock, ten shares to each, according to the apportionment contained in the certificate of incorporation, that of complainant being dated May 21st, 1889, and signed by Cord as president and Korb as secretary and treasurer. No cash was paid by either for his stock, which represented nothing more than prospective profits, which, according to the preliminary agreement, was to be equally divided between the three.

The corporators proceeded to have the farm laid out into streets and lots, and Cord and Korb undertook to make sales, in which they were very successful. The sales were made on the installment plan, a cash payment being made and a contract given to

Fougeray v. Cord.

the purchaser for the delivery of the deed upon the payment of the balance in monthly installments.

By a statement made up by Korb for the meeting of the stockholders on the 1st of April, 1890, after one year's existence, the financial situation of the corporation was shown as follows:

"Gross amount of sales to date, 208 lots, at a value of,          $47,010 00

RECEIPTS.

Money received on account of lots,                    $10,746 58

EXPENDITURES.

For payment of mortgage, interest on mortgage,
    improvements and other incidental expenses,  10,556 52
                                                      _____
                                                        $190 06
ASSETS.

Amount due on lots sold,                           $36,263 42
Estimated value of unsold lots,                     20,000 00
Balance in treasury,                                   190 06
                                                      _____
                                                                  $56,453 48

EXISTING LIABILITIES.

Commissions on sales, 20 per cent.,                 $9,312 00
Interest due on bonds,                                 183 00
Bonds outstanding,                                   3,050 00
Secretary and treasurer's salary,                    3,600 00
President's salary,                                  3,600 00
                                                      _____
                                                                  $19,745 00
                                                                 _____

                Estimated surplus,                               $36,708 48 "

At this annual meeting the defendant Samuel S. Cord transferred one share of his stock to his father, S. T. Cord, and with the aid of Korb elected the said S. T. Cord a director in place of the complainant.

In the statement above set forth the item of indebtedness of $19,745 is composed of outstanding bonds for $3,050 given to S. S. Cord and Korb, for the $3,050 cash payment advanced by them to the owner of the property, and the items of commissions and salary, amounting to $16,512, claimed by Cord and Korb to be due to them for one year's service. This claim was attempted to be sustained at the hearing on the ground that the complainant had failed to do anything towards aiding and furthering the en-

Fougeray v. Cord.

terprise, so that the whole burden fell on Cord and Korb, and justified them in paying themselves liberally for their services..

These large charges and dropping of the complainant from the direction produced dissatisfaction on his part, and put a stop to anything like co-operation between him and his associates, and some litigation ensued, not important for present purposes.

On the 10th of June, 1890, the two Cords—father and son— together with Korb, formed a new corporation, called "The Laurel Springs Land and Improvement Company," similar in its provisions to those of the Laurel Springs Land Company, having a capital of $5,000, divided into fifty shares of $100 each, forty-eight of which were allotted to the defendant S. S. Cord, one to the defendant Korb, and one to Samuel T. Cord, the father of the defendant S. S. Cord. On the 13th of June the defendants caused to be executed by the Laurel Springs Land Company to the defendant Korb a deed of conveyance conveying the farm aforesaid, excepting the lots in the meantime actually conveyed, and two or three lots in addition thereto, in consideration of $5,000, and on the same day Korb, for the same consideration, conveyed the premises to the Laurel Springs Land and Improvement Company. · The old company on the same day, under the same management, transferred to Korb all the contracts for the lots already taken, thereby denuding the old company of the greater portion of its property. These deeds of conveyance were lodged for record in the register's office of Camden county, and were each marked on their back with the words "don't pub.," for the purpose of preventing their being given out to the newspapers for publication. These transfers were made without actual consideration paid, in pursuance of a set of resolutions adopted by the elder company, as follows:

"WHEREAS this Company heretofore on or about the eighth day of April, 1889 purchased of Chas. Korb and Samuel S. Cord a tract of land situated at Laurel Springs Camden County for the sum of Nine thousand five hundred and fifty dollars, a certain mortgage of Five thousand five hundred dollars made by Samuel S. Cord to Montgomery Stafford forming part of the consideration, the balance of the price being secured by judgment bonds of this Company to said Charles Korb and Samuel S. Cord, no cash having been paid..

"AND WHEREAS, this Company has disposed of a large portion of said prem- ises, the payment of much of which is to be paid for in monthly instalments and this company having collected a large number of said monthly instalments and used the same in paying off said mortgage and defraying necessary expenses, whereby *this Company has incurred the obligation of conveying said sold portion to the purchasers thereof;* and whereas this Company has been unable to pay to said Korb and Cord the money due them upon the obligation of the Company;

"AND WHEREAS this company is largely indebted to the said Korb and Cord for services and commissions and has been unable for lack of funds to pay them the amounts due them for the purchase price of said lands or their services since rendered;

"AND WHEREAS said Korb and Cord have signified their willingness to receive back the unconveyed portion of said premises in liquidation of the original purchase price and all moneys due to them, excepting out certain lots, and to assume the contracts made by this Company for the sale of a portion thereof; and have requested said conveyance to be made to Charles Korb;

"*Now therefore, be it Resolved,* That this Company do forthwith re-convey the unconveyed portion of said premises to Charles Korb excepting thereout lots 5 and 6 section F. and 9 Section A. in full satisfaction of the obligation and indebtedness of this Company to said Charles Korb and Samuel S. Cord, he agreeing to perform all the agreements for the sale of any portions of said premises for which this Company is now liable, and furnishing this Company a release from Samuel S. Cord of all indebtedness.

"*Resolved,* That all contracts for the sale of any portion of said premises be and the same are hereby assigned to Charles Korb, and the officers of the Company are hereby requested to make and execute the necessary deed and assignments to carry out this resolution."

The business of selling lots was conducted after these conveyances precisely in the same manner as before, the new company, under the management of Cord and Korb, recognizing and fulfilling the contracts of the old company whenever they matured, and Cord and Korb receiving payment of installments due and paid by purchasers on those contracts.

On the 23d of September, 1890, complainant having acquired notice of these conveyances, filed his bill, with supporting affidavits, setting forth some of the foregoing facts, and praying that he might be decreed to be entitled to the equal one-third part of the profits already derived and thereafter to be derived from the enterprise; that the conveyances by which the land was transferred from the first to the second company might be decreed to be fraudulent and void as against the complainant and the first

·company; that the amount claimed and charged by S. S. Cord .and Korb as commissions and salaries might be declared to be fraudulent and void as against the complainant and the first com- ;pany; and that S. S. Cord and Korb might be compelled to bring the books of the company into this state for examination ; that Korb and the two Cords and the two companies might ac- ·count to the complainant for his interest in the enterprise, and for a receiver and an injunction restraining the second company from conveying or contracting to sell or mortgage, or in any way ·disposing of any of the lands, and from assigning, transferring or in any way disposing of any of the assets of the first company, :and for further relief.

On presenting that bill an order was made on the defendants ·to show cause on a future day why an injunction should not issue .according to the prayer of the bill, and interim restraint was .made.

On the return of the order the several defendants joined in an :answer, in which they deny that complainant had any option for ·the purchase of the Stafford farm ; they admit that ten shares of ,full paid-up stock of the first company were issued to complain- ,ant, but allege that the consideration which complainant agreed ·to pay and perform therefor had never been paid or performed ·by complainant, and that his certificate of stock should be deliv- ·ered up to be cancelled, and they add a cross-bill, in which they ,pray that it may be so delivered up. They allege that the stock in the elder company was equally divided between the three cor- ,porators without the payment of any money, and upon the agree- ment and understanding that each should devote and contribute .his whole time and attention to pushing the sale of the lots into which the tract was to be divided, and that the complainant had not only wholly failed to assist in any manner the furthering of the enterprise, but had done all he could to embarrass and retard it, and for that reason was not entitled to any of the profits there- .tofore or thereafter to be derived from it; that the whole of the ·skilled labor which resulted in the prosperity of the company had ,been performed by the defendants Cord and Korb.

This answer was supported by affidavits which were read on the hearing of the order to show cause, and after argument I expressed the opinion that the transfers of property complained of were fraudulent and void as against the complainant, and advised an order that the defendants should produce before a special master of this court, for inspection by the complainant, all the papers, books, vouchers and contracts of sale belonging to the business of either of the land companies, and that whenever the funds in the hands of the treasurer of either of the companies should exceed the sum of $3,000 they should pay the same to the master, to be by him paid into court, and the individual defendants should appear, if required, to be examined by the master under oath. The defendants were further ordered to give bond, conditioned that each of them should come to an account with the complainant, and should pay over the money received by them from the sale of the lots, and they were restrained and enjoined from assigning, transferring, or disposing of any of the personal assets of either of the defendant companies, or any contracts for the sale of any of the lands in question. The order was made in this shape, instead of for the appointment of a receiver, at the request of the defendants, and to avoid a complete interruption and destruction of the enterprise.

Subsequently, on the 25th of March, 1891, the defendants applied for and obtained leave to file an amended answer, which they did on the 6th of April, 1891, in which they set up that on the previous 24th of February the Laurel Springs Land and Improvement Company conveyed the premises in controversy to the Laurel Springs Land Company; and they further set forth that while the title was in the younger company it had entered into contracts for the sale of twenty-three lots, giving their numbers, and had assigned those contracts to the Laurel Springs Land Company; that the younger company had carried out contracts for the elder company for the conveyance of two lots, giving their number, and that it had also sold and conveyed twelve lots, giving their number. The answer then sets out an account of receipts and disbursements between the Laurel Springs Land and Improvement Company and the Laural Springs Land Company;

Fougeray v. Cord.

also "a full and complete account of the Laurel Springs Land Company up to and including February 24th, 1891."

This last would seem to be, upon its face, a cash account of the older company. To the account contained in this answer the complainant, at the suggestion of the court, filed exceptions, and the cause was brought to a hearing upon the pleadings, including the exceptions to the account.

At the final hearing three matters were litigated—*First.* The right of the complainant to hold his certificate of stock entitling him to a one-third interest in the adventure. *Second.* The exceptions taken by the complainant to the account contained in the second answer of the defendants. *Third.* Whether the complainant was entitled at this time to a final ascertainment and setting off to him of one-third of the assets of the company.'

*First.* The evidence showed clearly enough that the complainant had an oral option for the purchase of the Stafford farm; that he was considerably advanced in years, and had been for several years secretary of the Magnolia Land Company, a corporation of a similar character owning land situate about two miles from Laurel Springs; that he had no tact or ability in finding purchasers for lots of this character, or promoting their sale, and his lack of efficiency in this respect was manifest. The defendant S. S. Cord was a sales agent on commission for the Magnolia company, and was well acquainted with the complainant. Korb was Cord's friend, and was induced by him to join in the enterprise. Korb saw the complainant several times before he paid his money and signed the articles of association. Cord and Korb insisted upon being elected to the offices which they afterwards held. The complainant was not asked or expected to resign his position in the Magnolia company in order to assist in carrying out the Laurel Springs enterprise. All that he agreed to do was to assist it as far as he could. At the time that the articles of association were signed, and after Korb had paid his money toward the purchase of the land, he objected to complainant's having one-third interest, and proposed to cut him down to a one-fifth interest; but complainant resisted this, and insisted upon having his full one-third interest in accordance with the

13

previous verbal agreement, and threatened to bring suit if it were not accorded to him, whereupon Korb yielded and signed the articles upon that basis.   As before stated, the certificate of stock was dated and issued to complainant on the 21st of May, 1889, but was not called for or taken away by him until the 25th of March, 1890, when it was delivered to him by the defendants without objection.   This was long after the failure of the complainant to perform his agreement to assist in making sales had occurred, if it ever did occur.   The evidence, however, shows that the complainant did all he could ever have been expected to do in that direction.

Very soon after the organization of the company and the laying out of the land into streets and lots, the defendants Cord and Korb began to scheme to get rid of the complainant.   They tried first to buy him out.   Failing in that they called a special meeting of the directors for June 14th, 1889 ; served notice of it upon him by mail, which reached him after the hour appointed for the meeting, and at that meeting they voted themselves each a salary of $3,000 per year, and, in addition thereto, a commission of twenty per cent. on all sales of lots, and Mr. Cord advertised himself as the sole agent for such sales.   The fair inference from this conduct on their part is that they then thought that such salaries and commissions would absorb the bulk of the profits and leave little or nothing to be divided with the complainant, and that they did not anticipate that the enterprise would be so successful as it afterwards proved to be.   Then I think that the fair inference is, further, that such success was due not only to the tact, industry and energy of Cord and Korb, but also to the favorable situation and other characteristics of the land itself, and for the finding of this land and procuring the purchase of it, the associates were indebted to the complainant.

The defendants, after the resolution fixing their compensation, seem to have carried on the business of the corporation without any consultation with, or asking any aid from, the complainant.

A charge was made that the complainant had used his situation and influence to injure rather than to aid the enterprise.   I think the charge fails.   It depends upon the accuracy of the

memory of a single witness, and her testimony in that regard is denied by Mr. Fougeray, and the discrepancy may well be explained by a consideration of the situation in which he was placed as secretary of the Magnolia company.

I think that the complainant's title to one-third interest in the profits of the enterprise, manifested by his certificate of stock, has not been shaken. If he has failed to perform his contract to aid in the enterprise, such failure might subject him to payment of damages in an action at law for its breach. He has not forfeited his proprietary right.

*Second.* The action of the two defendants—S. S. Cord and Korb—in their capacity as directors, in fixing their compensation in the way they did, is of no value whatever. *Gardner* v. *Butler*, *3 Stew. Eq. 702,* where the question is exhaustively examined both in the opinion of Chancellor Runyon in this court, and by Justice Van Syckel in the Court of Errors and Appeals ; *Cone* v. *Russell, 3 Dick. Ch. Rep. 208,* and cases there cited. The defendants are entitled to what their services are reasonably worth and no more. Evidence on this subject was adduced at considerable length. Before the launching of this enterprise Korb was a butcher in the city of Philadelphia, with no experience whatever in affairs of this kind. His business had produced him about $2,000 a year. He conducted it by the aid of an agent after the undertaking of this enterprise. The defendant S. S. Cord had been a sales agent for the Magnolia Land Company, without salary, at a commission of ten per cent., and half of his carriage hire and all his car fares, and had brought his income up to $2,000 the year previous to the launching of this enterprise. Witnesses were produced as to the usual commissions paid in such cases. One had sold a great many lots at ten per cent., the propriator paying all expenses ; others proved that within a few months before the hearing, the defendants Cord and Korb had been paid a commission of thirty per cent. for selling lots immediately adjoining the lots of the Laurel Springs Company ; and one instance was proven of the same commissions being paid to another saleman. But the proof was clear that the prevailing rate for such work in that vicinity was twenty per

cent. of the actual cash payments as made, the salesman paying his own expenses, and this, I think, under the circumstances, a full and fair compensation in this case.

The defendants Cord and Korb manifestly are not entitled to both commissions, and such salaries as they have credited themselves with. The work of managing the corporation outside of the sales of lots was very small; and here, after the launching of the corporation and the laying out of the farm into lots, its management, besides involving very little work, was so conducted as to work a gross fraud on the complainant, and might well be held to disentitle the defendants to any compensation whatever. But I am disposed to allow them a small amount on that score if they shall choose their compensation by way of commissions— say $250 each. The charges for carriage hire, car fares and cigars, and for advertising, will not be allowed if the defendants shall choose to take their compensation by way of commissions. If they waive commissions they may have salaries at $3,000 a year each, with the expenses just mentioned. These rates are fixed upon condition that no action shall be brought against complainant for failure to perform his agreement. The charges for expenses of litigation, counsel fees, &c., will not be allowed. This disallows all charges of that character except the fee of $50 to Mr. Harned for examination of title and preparing and attending to the organization of the corporation and expenses incident thereto.

*Third.* The complainant demands a partition of the present assets of the company and an allotment to him of one-third in specie. He bases his demand on two grounds—*first,* that the present assets all represent profits, and there is no reason why they should not be divided; he offers to take his share in specie by an allotment to him of one-third in number of the unconveyed lots and the contracts annexed to such as have been bargained away but not conveyed, to be ascertained by alternate choice or by lot; and upon the second and additional ground that the defendants have made use of their majority power to attempt to deprive him by fraud of his lawful interest in the property of the corporation and have so behaved as to forfeit all right to act

Fougeray v. Cord.

·as officers of the company and to entitle him to the aid of the strong arm of the court in separating his interests in the corporate property and withdrawing it from the further control of the defendants.

The power of this court to compel a corporation to make a dividend of its profits among its stockholders is well settled. This was assumed in *Park* v. *Grant Locomotive Works, 13 Stew. Eq. 114;* and see *Cook Stock.* § *541; Morawetz Corp.* § *404; Robinson* v. *Smith, 3 Paige 223; Scott* v. *Insurance Company, 7 Paige 198; Pratt* v. *Pratt, 33 Conn. 446* (at *p. 455); Beers* v. *Bridgeport Co., 42 Conn. 17* (at *p. 26*).   Ordinarily, of course, ·such dividends can be made only out of the net profits actually realized over and above all debts and liabilities and in a shape to be conveniently divided.   *Park* v. *Grant Locomotive Works, ·supra.*

In the case in hand the accounts contained in the second answer show the corporation to be free from debt, and the evidence at the hearing showed that sales of lots were being made since the ·filing of the answer, and cash being paid in on account of such sales and upon contracts for sales already made.   No capital was ever paid in as such.   The capital stock represented only prospective profits.   No capital is required to carry on and close up the business of the corporation unless· additional land be purchased.   The land owned by it has been divided into streets and lots.   The streets are dedicated to the ·public, and the bare legal title is of no pecuniary value to the company.   The lots are in a convenient shape to be distributed.   They, with the unexecuted ·contracts and cash on hand, form the assets of the corporation, and all of its assets are net profits.   ·It is not a case where the machinery of a corporation is necessary in order to successfully make sales of the lots.   All that the corporation has to do with such sales is to execute the contracts and deeds.   I see no reason ·why one-third in number of these lots may not be chosen, which would represent one-third in value of the whole and be conveyed to the complainant.   Such of them to be so conveyed as are subject to contracts may be so declared in the conveyance in order ·to secure the rights of the purchasers, or they may be conveyed to

a receiver or master of the court to hold for the parties subject to the rights of the purchasers.

This mode of making a dividend will not dissolve the corporation or prevent the other stockholders, the defendants herein, from proceeding under its organization to conduct its business to suit themselves. If, however, the majority of the stockholders had not misbehaved themselves in its management or practiced any fraud upon the complainant, I am not sure the case would warrant the interference of the court, and it is not probable that it would have been asked to interfere.

But the fraudulent conduct of the defendants Cord and Korb seem to me to render the duty of the court clear. They first voted to themselves salaries as officers many times greater than the value of any services they could possibly have rendered as such outside of the work of booming and selling the lots. They then voted to themselves compensation for the work of booming and selling at a rate sufficient to secure efficient work in that respect, including all expenses. They then pay those expenses out of the funds of the corporation. Finding that the profits of the enterprise were so great as still to leave the complainant a handsome prospective dividend, they deliberately conveyed and transferred nearly all the assets to themselves in payment of debts claimed to be due to themselves for the extravagant compensation before voted to themselves, although the balance sheet made up by themselves, two and a half months previously, showed an estimated surplus of assets over all liabilities of nearly $37,000. In short, the whole transaction was a piece of gross and bungling thievery; and yet, when called upon to account for it in this court, the defendants had the assurance to attempt to support it by an answer; and then, after a strong expression of opinion by the court at a preliminary hearing of its fraudulent character, they coolly reconvey and retransfer the property, which they had just stolen, to its former custody, which, in point of fact, is their own custody, and then say to the court that it is powerless to interfere with it in its present *status*. It seems to me that it would be a reproach to the administration of justice to doubt the power and duty of the court in such a case. It is similar to that

of a trustee who holds certificates of stock in his name as trustee lodged in a strong box belonging to the trust estate, and then deliberately has them transferred to his individual name, and the certificates lodged in his individual private strong box, and, when called to account for his breach of trust, retransfers the certificates to his name as trustee and lodges the new certificate in the strong box belonging to the estate, and then coolly says to the court that " the breach of trust is made good ; nothing is lost, and I am entitled to retain the key of the strong box and to have the certificate of stock continue to stand in my name as trustee."

It is well settled that the officers of a corporation occupy towards its stockholders the relation of trustee and *cestui que trust*, and on that broad ground are liable to be called upon to account for their conduct in this court.     *Morawetz Corp.* § *381 ; Cook Stock.* § *648.*     But if this ground is not, strictly speaking, true, I agree with Mr. Cook that reliance may well be placed upon the broad principle laid down by Lord Hardwicke, one hundred and fifty years ago, in *Sir Robert Sutton's Case,* a case similar to the one now before the court, reported in *2 Atk. 400.*     At *p. 406* he says : " The tribunals in this Kingdom are wisely formed both of courts of law and equity, and so are the tribunals of most other nations, and for this reason there can be no injury but there must be a remedy in all or some of them, and therefore I will never determine that frauds of this kind are out of the reach of courts of law or equity, for an intolerable grievance would follow from such a determination."

Where the offending officers constitute, as here, a controlling majority of the stockholders, the action must necessarily be brought by the individual stockholder or stockholders who finds himself or themselves in the minority.     *Cook Stock.* § *645 ; Hawes* v. *Oakland, 104 U. S. 450.*

It is the peculiar province of this court not only to right wrongs already committed, but to protect property from future injury and waste by withdrawing it from the reach of danger.     In the case of a willful breach of trust it not only compels the guilty trustee to restore the trust property, but removes it from the possession and control of the custodian who has proved untrustworthy.

There is nothing in the character of a trading corporation to prevent the application of this remedy. It is, after all, as between the stockholders, nothing more than a trading copartnership. *Morawetz Corp. § 3.* In *Robinson* v. *Smith, 3 Paige 222*, Chancellor Walworth (at *p. 232*) says that "joint stock corporations are mere partnerships except in form ; the directors are the trustees or managing partners and the stockholders are the *cestuis que trust*, and have a joint interest in all the property and effects of the corporation." And in *Pratt* v. *Pratt, 33 Conn. 446*, Hinman, C. J. ( at *p. 456*) says : "Joint stock companies in modern times are nothing but commercial partnerships, which have taken the form of corporations for the greater facility of transacting business, and to prevent a dissolution of the concern by those numerous events which are so liable to work a dissolution in a partnership composed of a great number of individuals."

In the case in hand it is impossible to leave the complainant's property interests in the control of the corporation without leaving it in the control of the two defendants Cord and Korb, and they have proved themselves wholly untrustworthy, so that if this were a case of partnership the court would dissolve it at once and divide the property. The exigency of the case demands the same remedy here, as far as it is necessary to ascertain and give complainant his share. This, as I have already shown, can be done without dissolving the corporation or seriously interfering with the conduct of its business.

If it be said that the scope of the articles of association warrants the reinvestment of the profits of this adventure in other lands, the answer is, that the power on the part of the defendants to make such investments furnishes an additional reason why they should not have the opportunity to do so.

I will advise a decree that the lots remaining unsold and not contracted to be sold shall be divided, by their present boundaries, into three equal parts, and one part allotted and conveyed to the complainant, the other two parts to remain in the corporation ; and that such division be had in the presence of a master, either by lot or by alternate choice, as the defendants may choose, reserving leave to either party, after a division so made, to show

by proof that it is unequal in value and to claim owelty; that the lots contracted to be sold and not conveyed shall be conveyed by the corporation to a receiver to be appointed by this court, to be held by him in trust for conveyance to the parties holding the contracts as soon as they shall have paid to him the amount due on their several contracts. The contracts must also be assigned and transferred to said receiver. There will be an order of reference to a master to take an account of the receipts and disbursements of the treasurer of the corporation upon the basis hereinbefore stated, and also of the debts due and owing, if any, by the corporation.