## Thomas Cratty v. The Peoria Law Library Association.

### Gen. No. 4,412.

1. DIVIDENDS—*when by-law providing for payment of, ultra vires.*
A by-law of a corporation organized either for pecuniary profit or not
for pecuniary profit, which guarantees to stockholders an annual dividend, is *ultra vires* and void.

2. DIVIDENDS—*by-law providing for payment of, construed.* A by-law providing for the payment of an annual dividend will not be so construed as to render its performance of such a character as would practically defeat the purposes of the corporate organization, and in such connection will not be so construed as to constitute an obligation to be discharged in advance of running expenses.

3. DIVIDENDS—*jurisdiction of equity to order.* Equity has jurisdiction in a proper case to compel directors to declare and pay a dividend.

4. SECRETARY OF STATE—*what corporations not obligated to report to.*
Corporations organized not for pecuniary profit are not required to make to the secretary of state the annual report provided by the act of May 10, 1901.

5. ESTOPPEL—*when, arises by pleading.* A pleader is estopped to urge that a corporation was organized not for pecuniary profit where by his bill he substantially alleges that it was organized for pecuniary profit.

6. DIRECTORS—*extent of liability of.* Officers of a corporation are not held to a strict accountability that every disbursement of corporate funds made by them for legal purposes, is at their peril or personal responsibility in case a court, sitting to review the internal management of such corporation, shall reach a conclusion that the funds ought to have been employed for a different purpose. Such an officer only engages for good faith, fidelity and honest service.

Bill for accounting. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed May 27, 1905.

JUDSON STARR, for appellant.

J. H. SEDGWICK, F. H. TICHENOR and GEORGE T. PAGE, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.
This is an appeal from a decree of the Circuit Court of Peoria County sustaining a demurrer to and dismissing appellant's bill. Since the sufficiency of the bill is the only

question for determination, it will be necessary to set out its substantial averments. The bill alleges that prior to January 6, 1879, appellant, who was then a lawyer engaged in the general practice of his profession in Peoria, together with sundry other members of the Peoria bar entered into a written agreement to organize a law library association; that it was agreed that such association should be organized, and that the lawyers who became stockholders should put in their private libraries at a fair appraisal, and receive stock in the association at par for the value of their several contributions. It was also specified in this preliminary agreement that the stockholders should receive an annual dividend of eight per cent. on the face value of such stock and that the same should be provided for in the by-laws of the association when organized. On January 6, 1879, the association was duly incorporated as The Peoria Law Library Association, and thereupon proceeded to adopt by-laws for its government. The only sections of the by-laws that have any bearing on this controversy are sections 12, 15 and 16 which are set out in full in the bill as follows:

"Sec. XII. The association guarantees to every stockholder a dividend of eight per cent. per annum on the amount of paid in stock held by him or them from the date of such payment, which dividend shall be a charge against the association, and the production of the certificate of stock, or receipt of payment, shall entitle the holder to the amount of such dividend; such dividend shall be due and payable on the first day of January in each year."

" Sec. XV. The Board of Directors shall fix the annual dues of members at such an amount as may be necessary to raise a sufficient sum annually to pay, 1st, a dividend of eight per cent. per annum on the paid in capital stock of the association; 2nd, the necessary expenses of the association; 3rd, to keep up the continuation of all the reports and legal periodicals owned by the association; and 4th, to purchase new books and legal publications."

" And shall grade membership into four classes: The first to be composed of all practicing attorneys who have been admitted to practice for ten years; the second, those who have been admitted for five years; the third, those who have been admitted less than five years, and all attorneys

not engaged in practice; and the fourth, of all students, and other persons desiring membership."

"Sec. XVI. That until otherwise provided by resolution, to be entered upon the records of the association, the annual dues for the respective grades of membership shall be as follows :

Members of the first class..................$80.
Members of the second class................. 60
Members of the third class.................. 40
Members of the fourth class................. 20

"All dues must be paid quarterly in advance, on the first day of January, April, July and October in each year;

"Provided that whenever any change is made in the amount of annual dues to be paid, said resolution shall be passed at least sixty days prior to the commencement of the quarter at which the same is to take effect, and sixty days notice thereof prior to said change shall be given to each member; and provided also, that attorneys not residing or having offices in the city of Peoria may be admitted at half the regular rates."

The bill alleges that appellant was the owner of a large and valuable law library, consisting substantially of all the Federal, State and Territorial reports and a large and valuable line of text books, in all over 2,000 volumes, which he turned over to appellee and received certificates of stock for twenty-one shares of the capital stock of the association, in part payment for his library, the balance having been paid in money or its equivalent. Appellant charges that he became a member of the association of the first class mentioned in by-law 16, and thereafter paid annual dues at the rate of $80 per year and received his eight per cent. dividends or interest until May 1, 1880, when appellant removed from Peoria to Chicago, since which time he has paid no dues and received no dividends, although he has often requested payment of such dividends.

It is alleged that the association continued for a number of years to pay the eight per cent. to stockholders resident of Peoria after it refused to pay appellant. It is charged that these annual payments are accumulative and that there is now due appellant a large sum of money on account of these accumulated dividends and interest thereon amount·

ing to more than $3,000; that the association has collected large sums of money in annual dues from the members of the association, the amount of which is not known to appellant, but it is charged that the money thus collected amounts to many thousands of dollars; that appellant has repeatedly sought to have an accounting with appellee of the moneys collected and disbursed and the amounts due appellant, but appellee has refused to come to an accounting or to pay anything whatever to appellant, claiming that it had no funds available for such purpose, and that the entire income of appellee from dues was required to pay expenses and for the continuations of reports and periodicals and to buy new books. Appellant charges that these disbursements of money were illegal and in violation of the contract entered into and set out in the by-law, and that the eight per cent. dividend or interest on stock was a preferred and fixed charge upon the association, which should have been paid first as classified in section 15 of the by-laws, and that the diversion of the funds to the other purposes mentioned in said by-law was illegal and in violation of the trust relation of the officers and managers of appellee, which makes them personally liable to appellant and gives him a right to follow such funds and have a lien established on the books bought and paid for with these funds.

It is also charged that the association is not serving the purpose for which it was organized; that the lawyers of Peoria are not using the library generally and that the receipts from dues have fallen off to a large extent; that the stock is depreciated and is being bought up by a few persons, who use and control the library, and that there is no prospect that the association will ever be able to carry out its contract with appellant and other stockholders.

It is alleged that the association has failed and neglected to hold any meetings of stockholders since 1895, and that there has been no directors elected since that date.

It is charged that the association failed to make its report to the secretary of state as required by the law of 1901, and that in consequence the Secretary of State had, on July

1, 1902, canceled the charter of the association as required by said act.

In consequence of these facts it is claimed said association has no right under the law to continue a pretended existence for the transaction of any business, and that its affairs ought to be wound up, and its assets divided among its stockholders according to their respective rights. It is charged that James H. Sedgwick claims to be a creditor of the association, but it is averred that he became such creditor by purchasing a past due note from Lydia Bradley, which was acquired while Sedgwick was a director, and that he had full knowledge of the transaction and participated in the wrongful misappropriation of the funds which ought to have been used to pay said note, and appellant insists the note should not be paid as against the rights of appellant.

It is averred on information and belief that F. H. Tichenor, L. D. Puterbaugh, J. M. Rice, George T. Page and James H. Sedgwick are the present directors and managers of said association, and that said Puterbaugh is its president, Tichenor its secretary and Sedgwick its treasurer. It is stated also on information that O. J. Bailey, David Mc-Cullock, William Jack, J. S. Stevens and J. S. Starr are stockholders in said association, but the amount of stock held by each is unknown to appellant. The association in its corporate capacity and the above named individuals are made parties defendant to the bill.

The prayer of the bill is that an accounting may be had of the matters and things charged in the bill, especially of the amount due appellant and the amount due any other person, and for a discovery of any other person who may be interested either as stockholder or creditor with leave to make such persons, if any, parties defendant when ascertained; that an investigation may be made as to what persons acting on behalf of the association have contracted any indebtedness in its name for expenses, books, periodicals or borrowed money, and that an accounting may be had of the amount paid out for books or other publications

by the association, the location and value of such books; that a decree may be entered against the association for the full amount due appellant on his stock and fixing the liability of such persons as may have diverted or misapplied the funds of the association and praying for a first lien on any books or publications that may have been purchased by the association or any of its officers with its funds; that any indebtedness against the association be disallowed, especially if held by any officer or stockholder, and that no indebtedness be paid until appellant is paid in full; that the association shall be dissolved and its affairs wound up and its effects distributed to appellant and such others as may be entitled to them; that a receiver be appointed to marshal the assets and wind up the affairs of the association and for an injunction against the directors from using the dues except as required by the by-laws, and for general relief.

Several of the defendants answered the bill admitting that appellant is entitled to the relief and claiming the same relief for themselves. The others, including the corporation, demurred to the bill, which was sustained and appellant electing to abide by his bill; a decree was entered dismissing the same and against appellant for costs, from which this appeal is prosecuted.

The case presented by this bill against the corporation is predicated upon the assumption that the by-law which guaranteed eight per cent. dividend per annum, created an unconditional obligation to pay this charge regardless of its ability to do so out of its income; and that the corporation having failed to meet this obligation to appellant until the accumulated dividends and interest amounted to over $3,000, an accounting should be had, a receiver appointed and the assets sold and distributed among the persons entitled thereto. Appellant's construction of by-law number 12 is the foundation of his conclusions of legal responsibility. Upon it he rests the liability of the corporation as well as that of the officers and managers. If the foundation is removed the legal structures erected thereon

will come down of their own weight. What is the meaning of by-law number 12 ? It guarantees an eight per cent. dividend on the amount of paid in stock, which dividend shall be due and payable on the first of January of each year. " A dividend is a corporate profit set aside, declared and ordered by the directors to be paid to the stockholders on demand or at a fixed time." Cook on Corporations, sec. 534; King v. Paterson, etc., R. R. Co., 29 N. J. L. 82; Lockhart v. VanAlstyne, 31 Mich. 76. The above definition of the word " dividend " is supported by many authorities. In Mobile & Ohio R. R. Co. v. Tennessee, 153 U. S. 486; the word is defined as follows: "The term dividend in its technical as well as its ordinary acceptation, means that portion of its profits, which the corporation, by its directory, sets apart for ratable division among its shareholders." See also, Boone on Corporations, sec. 125; 2 Thompson on Corporations, sec. 2126.

A dividend is not a debt until it is declared and set apart. 2 Thompson Corp. sec. 2127; Lockhart, v. VanAlstyne, *supra.* It is, however, contended that the use of the word " guarantee " in connection with the word dividend changes the meaning and converts a dividend, which in its very nature can have no legal existence outside of profits, into a fixed and unconditional liability wholly independent of any pre-existing profits. The relation of appellant and the corporation is clearly that of stockholder and stock company. It is not the relation of debtor and creditor. The issuing of stock by a corporation with a guarantee of a fixed rate of dividend payable at fixed times, only creates a charge upon all accruing profits at the stipulated rates, and is to be paid before any dividends can be paid on stock not thus preferred. Henry v. The Great Western Ry. Co., 3 Jurist, part 1, p. 133; Taft v. Hartford, Providence & Fish Kill R. R. Co., 8 R. I. 310. In Crawford v. North Eastern Ry. Co., 3 Jurist, pt. 1, p. 1093, Vice-Chancellor Wood, speaking of guaranteed dividends said: " Of course, I do not mean to say that it is a guaranty in any other sense than that you are to be paid these sums out of the

profits of the company. That is the only fund you are to look to. If the company makes no profits you will have no dividend." Clearly if the by-law in question be held to be a contract between the corporation and the shareholder, it can only be held to be a contract to pay the dividend out of the profits. But it is argued that the corporation was not organized to make profits, that it was a library association organized, it is said, to furnish its members and patrons with a law library such as they could not individually afford. It is said the scheme of the association is such that it may well be treated as organized under the statute relating to corporations "not for pecuniary profit." If this contention prevails, then what becomes of the by-law upon which appellant rests his right to maintain his bill? Can an association organize under the statute, "not for pecuniary profit," and then issue stock to all its shareholders and guarantee eight per cent. dividends annually? If this be good law it is a matter of surprise that all corporations do not avail themselves of this easy method of avoiding the onerous fees of the secretary of state and the burdens of taxation on their stock. If this association is organized under the law relating to corporations "not for pecuniary profit," then the by-law in question is *ultra vires* and void and appellant has no standing in court. Section 33 of chapter 32 relating to Corporations "not for pecuniary profit," expressly prohibits the payment of any dividend or any distribution of its property until all its just debts are paid, and then only upon the final dissolution of the corporation and surrender of its organization and name.

The bill in this case charges that the charter of the corporation was forfeited by its failure to make reports as required by the by-law of 1901 relating to corporations and requiring them to report to the secretary of state and that its charter was canceled on July 1, 1902, for failure to report. Appellant contends that this is an additional reason why a receiver ought to be appointed and the affairs of the corporation wound up. Corporations organized "not for pecun-

iary profit" are not required to report under the law of
1901, but are expressly excepted by section 2 of said act.
The bill charges that the law of 1901 required "all corpo-
rations of the character or class in which said association
stood to make certain reports annually to the secretary of
state." This is an admission that this association was not
organized under the law relating to corporations " not for
pecuniary profit," and should estop appellant from insisting
to the contrary. Hull v. Johnston, 90 Ill. 604.

If appellant's contention is sustained the practical effect
of it would be to divide a portion of the capital annually
among its stockholders in case its profits were too small to
meet the necessary running expenses, keep up its reports
and pay eight per cent. on all the outstanding stock. It is
absurd to suppose that it was the intention of the persons
who organized this library association to pay eight per
cent. dividends annually even if the books of the library
had to be sold to raise the funds to pay it. Even if the
language of the by-law was such that no other interpreta-
tion could be put upon it, then it would be illegal and void
since in effect it would be indirectly dividing the capital
stock among the stockholders, which under the law cannot
be done except on final dissolution of the corporation and
after all its debts are paid. 2 Thompson on Corporations,
sec. 2236; Pittsburg R. R. Co. v. Alleghany County, 63
Pa. St. 126; Ohio College v. Rosenthal, 45 Ohio St. 183.

Properly construed the by-law in question will be a help
rather than a hindrance to the attainment of the purposes of
the corporation, but if it be held to create an ever increasing
debt with its accumulations of interests, which must be paid
at all events, even at the expense of regular and constantly
increasing impairments of the capital stock, it becomes an
insupportable burden which will impede the progress, de-
feat its objects and finally plunge the corporation into
financial ruin and insolvency. Appellant seeks to support
his contention by the fact that by-law number 15 provides
that the board of directors shall fix the dues of members at
such a sum as shall raise a sufficient amount to pay (1) a
dividend of eight per cent.; (2) necessary expenses of the

association; (3) to keep up the continuations of all reports and periodicals; and (4) to purchase new books. It is assumed that because the eight per cent. dividend is the first mentioned among the purposes for which the dues shall be used, that no part of the funds could legally be applied to either of the other purposes until the dividends were provided for. How could this association hope to exist without library rooms and some one to care for the books? This means necessary expenses, besides lights, heat and taxes must be paid in order to realize the objects of the association. Then all lawyers understand that the continuations of reports and additions of new books and new editions of old ones, are indispensable to make a law library valuable. Still in the face of these very essential needs, appellant's contention is the eight per cent. dividend must be paid before heat, lights, rents and taxes. No such unreasonable meaning is to be attributed to the language employed in these by-laws.

While we have so far only considered the case made by the bill as specifically applicable to the corporation, yet it is manifest that what has been said virtually disposed of the cases as presented against the officers and managers. Since, as we have seen, the by-laws did not create the absolute duty to pay the dividends regardless of the ability of the officers to do so and meet other necessary and proper expenses, it follows that the officers and managers were guilty of no wrongful diversion of trust funds, in their hands to be disbursed, and there can, therefore, be no grounds to rest a personal liability upon or against them. There is no charge of fraud or bad faith against the directors. There is nowhere a suggestion that one of them ever received a penny for his services or that any one of them has made or sought to make any profit for himself out of his relations to the company. If it be granted that the directors owed the duty to apply all of the money they received on dividends, to the exclusion of other proper demands, if they acted in good faith and with the honest purpose of serving the best interests of the association, in applying the funds to some other proper corporate purpose,

they cannot be held personally liable.   Officers of corporations are not to be held to a strict accountability that every disbursement of corporate funds made by them for legal purposes, is at the peril of personal liability in case a court, sitting to review the internal management, shall reach a conclusion that the funds ought to have been paid for another purpose.   While the position of director in such an association is representative and fiduciary, such officer is not an insurer against the fallibility of his judgment.   He engages only for good faith, fidelity and honest service. If the law was otherwise few men could be found who would assume a relation carrying such responsibilities. In the following cases the views above expressed find support:   The Charitable Corporations v. Sutton, 2 Atk. 400; The York & North Midland Ry. Co. v. Hudson, 16 Beavan, 495; Williams v. Page, 24 Beavan, 661; Turquad v. Marshall, 5 Chancery Appeals (Law Rep.), 386; Lexington & Ohio R. R. Co. v. Bridges, 7 B. Monroe, 556; Godbold v. Branck Bank at Mobile, 11 Ala. 191; Hodges v. New England Screw Co., 1 R. I. 312; Neall v. Hill, 16 Cal. 146; Speering's Appeal, 71 Pa. St. 1.

Ordinarily, the matter of declaring dividends, as well as all other matters relating to the management of the corporation are left to the sound discretion of the managing agents, still in a proper case the law seems to be that a court of equity may take jurisdiction to compel the directors to declare a dividend and pay the same.   1 Morawetz Pri. Corp., sec. 276; Beers v. Bridgeport Co., 42 Conn. 17; Scott v. Eagle Fire Co., 7 Paige, 203.

But the bill before us is not a bill to compel the declaration of a dividend; on the contrary, the court is virtually asked to declare the dividend, compel its payment and punish the directors and managers by holding them personally liable for not having made a disbursement of its funds to the appellant.   There is no view in which the bill can be sustained and the demurrer was properly sustained thereto.

The decree is affirmed.

*Affirmed.*

# CASES

DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEAR 1905.